**OLD REPUBLIC INSURANCE COMPANY, Appellant,**

v.

**Inez RODRIGUEZ, Appellee.**

No. 08–97–00089–CV.

Court of Appeals of Texas,
El Paso.

March 31, 1998.

J.L. Jay, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for Appellant.

Monty B. Roberson, El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

### *OPINION*

LARSEN, Justice.

This is an appeal from a jury verdict in favor of the plaintiff employee on his workers' compensation claims. We affirm.

## FACTS

Appellee Inez Rodriguez injured his low back and left knee on August 6, 1991 while working as a general laborer at the Asarco plant in El Paso, Texas. Rodriguez saw Dr. Mario Palafox, who examined him and assigned him a 31 percent impairment rating for purposes of his workers' compensation claim. Appellant Old Republic Insurance Company, Asarco's workers' compensation carrier, sent Rodriguez to the doctor of its choice, Dr. Arsavir Arat, who assigned Rodriguez a 15 percent impairment rating. Because the findings conflicted, the Texas Workers' Compensation Commission appointed Dr. Charlotte Smith to examine Rodriguez. She also found Rodriguez's impairment rating to be 15 percent. Rodriguez returned to work at Asarco on January 11, 1993, but sustained an additional injury to his low back and right shoulder on April 16, 1993. Rodriguez also began experiencing problems with his 1991 knee injury in August 1993 while he was still off work and receiving workers' compensation benefits for his 1993 shoulder injury. Rodriguez had knee surgery and was unable to work until at least April 1994. Rodriguez applied for, and was denied, supplemental income benefits for the 1991 injury.

Rodriguez appealed both Dr. Smith's impairment rating, and the denial of supplemental income benefits through a benefit review conference, contested case hearing, and administrative appeal to the Commission. The Commission found 15 percent impairment and no entitlement to supplemental income benefits. Rodriguez sued Old Republic in district court seeking a higher impairment rating and entitlement to supplemental income benefits. The jury agreed with Rodriguez and awarded him a 30 percent impairment rating and supplemental income benefits for the first quarter he became eligible. Old Republic appeals the jury's verdict with six points of error.

1. TEX. LAB.CODE ANN. § 410.306(c) (Vernon 1996).

2. *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 528 (Tex.1995).

## TESTIMONY OF DR. MORENO

In its first and second points of error, Old Republic contends that the trial court impermissibly allowed Dr. Manuel Moreno to testify concerning Rodriguez's impairment rating because Dr. Moreno did not testify before the Commission. Section 410.306 of the Texas Labor Code provides that at trial, evidence of extent of impairment shall be limited to that presented to the Commission.[1] This procedural limitation encourages parties to present relevant evidence during administrative proceedings, thus increasing the accuracy and efficiency of those proceedings.[2] Rodriguez had presented only the medical records and reports of Dr. Mario Palafox to the Commission. Dr. Palafox unfortunately died before trial of this case. Rodriguez therefore presented Dr. Palafox's records and reports along with testimony from Dr. Moreno even though neither Dr. Moreno himself, nor any of Dr. Moreno's reports or records, were ever presented before the Commission.

■ Our review of the record reveals, however, that Dr. Moreno did not testify about Rodriguez's "extent of impairment" as forbidden by the statute. Rather, Dr. Moreno explained the procedures used during medical examinations to assess impairment ratings, discussed the American Medical Association guidelines for impairment ratings, and explained how the guidelines are used by doctors to arrive at the percentage impairment ratings employed in workers' compensation cases. The statute does not prohibit all evidence not presented to the Commission. It prohibits only evidence of the extent of impairment not presented to the Commission. In this case, no evidence of the extent of Rodriguez's impairment not previously presented to the Commission was elicited from Dr. Moreno.[3] Accordingly, we overrule Old Republic's first two points of error.

3. Dr. Moreno did point out a clerical error in Dr. Palafox's calculations. As discussed under points of error three through five, we do not find the correction of a clerical error to be evidence of the extent of impairment not presented to the Commission within the meaning of the statute.

## VIABILITY OF JURY AWARD OF 30 PERCENT IMPAIRMENT

In its next three points, Old Republic contends that the jury's finding of 30 percent impairment was not legally permissible and therefore was immaterial. Old Republic maintains that the trial court had no choice but to enter a judgment of 15 percent impairment as found by Drs. Arat and Smith because their impairment ratings were the only impairment ratings in this case both presented to the Commission and calculated in accordance with the American Medical Association guidelines.

### 1. "Presented" to the Commission

■ The Texas Labor Code requires that a jury adopt the specific impairment rating arrived at by one of the physicians in the case and evidence of the extent of impairment is limited to that presented to the Commission.[4] The only impairment ratings arrived at by the physicians and presented to the Commission were Drs. Smith's and Arat's 15 percent ratings, and Dr. Palafox's 31 percent rating. No 30 percent impairment rating was ever presented to the Commission. The 30 percent figure was raised for the first time at trial during Old Republic's cross-examination of Dr. Moreno. Old Republic's counsel pointed out, and Dr. Moreno agreed, that Dr. Palafox made an error when he combined his diagnostic impairment rating with his range of motion impairment rating for Rodriguez's back.[5] Instead of 21 percent, the impairment rating for Rodriguez's back should have been 20 percent. Accordingly, Dr. Palafox's total body impairment rating was also off by 1 percent. Old Republic therefore contends that the 30 percent impairment figure should not have been submitted to the jury because a 30 percent impairment rating was not one of the specific

impairment ratings presented to the Commission.

Old Republic relies on *Garcia* to support its position. The Supreme Court held in *Garcia* that:

[I]f three doctors testify, respectively opining that the claimant is 10, 14, and 20 percent impaired, the jury must return one of those three numbers as its verdict. It may not consider the entirety of the testimony to find, for example, an impairment rating of 16 percent.... The Act simply does not contemplate or allow any other rating; e.g., one 'in between' the physicians' findings. In other words, the requirement that the impairment rating match one of the physicians' findings is part of the substantive statutory scheme.[6]

We believe this language in *Garcia* is intended to address compromise verdicts, not a situation like that presented here. The jury here did not reach a compromise verdict somewhere between 15 percent and 31 percent. Rather, the jury accepted Dr. Palafox's findings with a correction for his clerical error. We do not find that *Garcia* forbids jury correction of clerical errors in impairment calculations.

### 2. Impairment Calculation According to AMA Guidelines

Old Republic maintains that Dr. Palafox's 31 percent impairment rating should not have been submitted to the jury because his clerical mistake rendered it invalid under the American Medical Association guidelines.[7] We find no cases on point. We cannot, however, accept Old Republic's contention. In this case, the substance of Dr. Palafox's examination and the resulting impairment rating were not shown to be invalid pursuant to

---

4. *Garcia,* 893 S.W.2d at 528; Tex. Lab.Code Ann § 410.306(c) (Vernon 1996).

5. Dr. Palafox assigned a 14 percent impairment to Rodriguez's range of motion and 7 percent for diagnostic impairment. Dr. Palafox concluded that Rodriguez's total impairment rating for his back was 21 percent. Impairment ratings, however, are not calculated by adding the diagnostic and range of motion impairment ratings together. Rather, as Dr. Moreno explained at trial, the doctor uses a table provided in American Medi-

cal Association guidelines which may result in an impairment rating different from that which would be obtained through a simple addition of the various individual impairment ratings.

6. *Garcia,* 893 S.W.2d at 528.

7. *See Garcia,* 893 S.W.2d at 526 ("... Act ... specifically requires all determinations of impairment to be made under the Guides").

AMA guidelines. Rather, it was shown that Dr. Palafox made a clerical error in using the AMA tables to combine impairment ratings. The jury believed the substance of Dr. Palafox's impairment findings and appropriately corrected his clerical mistake by finding a 30 percent, rather than a 31 percent, impairment. We do not believe that the statute should be construed to deprive a litigant, whether that litigant be an injured employee or a workers' compensation insurance carrier, of the right to present its impairment evidence to the jury simply because the doctor committed a minor clerical error such as the one in this case. Accordingly, we overrule Old Republic's third, fourth and fifth points of error.

## SUFFICIENCY OF THE EVIDENCE

In its sixth point, Old Republic challenges the sufficiency of the evidence to support the jury's finding that Rodriguez was entitled to supplemental income benefits. Supplemental income benefits are available to an injured employee upon the termination of impairment income benefits if the employee:

(1) has an impairment rating of 15 percent or more as determined by this subtitle from the compensable injury;

(2) has not returned to work or has returned to work earning less than 80 percent of the employee's average weekly wage as a direct result of the employee's impairment;

(3) has not elected to commute a portion of the impairment income benefit under Section 408.128; and

(4) has attempted in good faith to obtain employment commensurate with the employee's ability to work.[8]

Old Republic contends that the evidence is legally and factually insufficient to show that Rodriguez had not returned to work.

### 1. Standard of Review

In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary.[9] If any probative evidence supports the jury's determination, it must be upheld.[10]

The test for factual insufficiency points is set forth in *In re King's Estate*.[11] In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. It is for the jury to determine the weight to be given to the testimony and to resolve any conflicts in the evidence.[12] The jury's finding should be sustained if there is some probative evidence to support it and provided it is not against the great weight and preponderance of the evidence.[13] The parlance used by the courts of appeals is that such a finding "shocks the conscience" or that it is "manifestly unjust," limited by such phrases as "the jury's determination is usually regarded as conclusive when the evidence is conflicting," "we cannot substitute our conclusions for those of the jury," and "it is the province of the jury to pass on the weight or credibility of a witness's testimony."[14] Thus, we cannot substitute our judgment for that of the fact finder even if we find a fact contrary to that found by the jury, provided the jury finding is supported by probative evidence and is not against the great weight and preponderance of the evidence. If, however, the

---

8. Tex. Lab.Code Ann. § 408.142(a) (Vernon 1996).

9. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ).

10. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Neily v. Aaron*, 724 S.W.2d 908, 913 (Tex.App.—Fort Worth 1987, no writ); *see generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev 515 (1991).

11. 150 Tex. 662, 244 S.W.2d 660 (1951).

12. *Carrasco v. Goatcher*, 623 S.W.2d 769, 772 (Tex.App.—El Paso 1981, no writ).

13. *Id.*

14. *See, e.g., Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex.1994); *Beall v. Ditmore*, 867 S.W.2d 791, 795 (Tex.App.—El Paso 1993, writ denied).

verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained.

### 2. Factual Summary

Rodriguez was originally injured on August 6, 1991. He became eligible for supplemental income benefits on September 21, 1993. There was evidence in this case that Rodriguez had returned to work in January 1993, before he became eligible for supplemental income benefits. There was also evidence that Rodriguez left work in April 1993 because of new injuries to his shoulder and back and began receiving workers' compensation benefits for those injuries. Old Republic presented evidence that Rodriguez believed his August 1991 injuries were healed at the time he suffered the 1993 injuries. On the other hand, there was evidence that Rodriguez continued to have problems with his knee and back from the 1991 injuries. In August of 1993, Rodriguez had surgery on his knee as the result of the 1991 injury and received a second release from work for that injury. As late as April 20, 1994, Rodriguez's doctor reported that Rodriguez was unable to work because of the knee injury and had been unable to work since the 1993 surgery.

### 3. Conclusion: Sufficiency of the Evidence

We find that the evidence in this case, although conflicting, was sufficient under either a factual or legal sufficiency review to show that Rodriguez had temporarily, but not permanently, returned to work in 1993. There was evidence from which the jury could have concluded that Rodriguez was prevented from returning to work as the direct result of his 1991 knee and back injury at the time he became eligible for supplemental income benefits for those injuries on September 21, 1993. Although a different jury on a different day may have decided differently from this evidence, we find it legally and factually sufficient to support the jury's verdict. Accordingly, we overrule Old Republic's sixth point of error.

### CONCLUSION

Having considered and overruled each of Old Republic's points of error, we affirm the judgment of the trial court.