PACIFIC EMPLOYERS INSURANCE COMPANY, Appellant,

v.

Jimmy I. BROWN, Appellee.

No. 06–01–00121–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 16, 2002.

Decided Sept. 17, 2002.

Michael G. Lee, Stacey H. Langenbahn, Locker & Lee, PC, Irving, for appellant.

Katherine F. DÁunno, Williams–Bailey Law Firm, LLP, Houston, for appellee.

Bradley D. McClellan, Office of Atty. Gen., Austin, for Amicus Attorney TX Worker's Compensation Commission.

Before GRANT, ROSS, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice GRANT.

Pacific Employers Insurance Company, the workers' compensation insurance carrier for the employer of the defendant, Jimmy I. Brown, an injured worker, appeals the trial court's judgment that Brown have and recover indemnity benefits from Pacific accruing as a result of a seventeen per-

---

* William J. Cornelius, Chief Justice, Retired,    Sitting by Assignment.

cent impairment rating. Pacific filed suit for the trial court to determine the limited issue of the correct impairment rating after the appeals panel affirmed the contested case hearing officer's impairment rating determined at the Texas Workers' Compensation Commission's (referred to as TWCC or the Commission) benefit review conference and contested case hearing.

Pacific contends the judgment should be reformed to conform with the thirteen percent impairment rating the trial court stated in its Findings of Facts and Conclusions of Law. Pacific contends the trial court erred as a matter of law in assigning an impairment rating of seventeen percent in its judgment. Pacific contends the preponderance of the evidence at trial supports the thirteen percent impairment rating. Pacific also contends the trial court properly disregarded the TWCC's contested case hearing officer and appeals panel's improper sixteen percent rating arrived at by adding an additional three percent to the impairment rating certified by the designated doctor.

Brown sustained a compensable back injury on November 14, 1994. After several surgical procedures, Brown's treating doctor, Dr. Jeffery T. DeHaan, referred him to Dr. Barry Green for Dr. Green to perform a certifying examination to determine if Brown had reached maximum medical improvement (MMI) and, if so, to determine his impairment rating, the percentage of permanent impairment of the whole body resulting from a compensable injury. *See* TEX. LAB.CODE ANN. § 401.011(24) (Vernon Supp.2002); 28 TEX. ADMIN. CODE § 130.1 (2002).

Dr. Green performed the examination on September 17, 1996, in which he certified that Brown had reached MMI on that date, and he assigned Brown a thirteen percent impairment rating.

When Brown disputed Dr. Green's rating at a benefit review conference, Dr. Joseph Greenspan was appointed to serve as the Commission's selected designated doctor. Dr. Greenspan performed a certifying examination on October 14, 1996, and assigned Brown an impairment rating of seventeen percent.

On behalf of Pacific, Intracorp[1] reviewed Dr. Greenspan's impairment rating report and determined that he had failed to convert the impairment for sensory deficits to a whole person percentage as required by the American Medical Association (AMA) Guides and that, properly converted, the rating should have been thirteen percent. Dr. Greenspan reviewed the Intracorp report and stated in a letter to the Commission dated January 14, 1997, that he agreed the impairment rating should be thirteen, not seventeen, percent.

Dr. DeHaan commented on Dr. Greenspan's rating, at the request of the Commission, and concluded that "17% or 18% would be appropriate but certainly not 13%."

At the contested case hearing, the hearing officer focused his attention on Dr. Greenspan's invalidation of lumbar lateral flexion range of motion, which Dr. Greenspan explained in his report as having been invalidated by the result of the straight leg testing, and the officer requested clarification from Dr. Greenspan. Dr. Greenspan responded by letter dated October 20, 1997, that the invalidation was based on the deviation of greater than ten percent and five degrees. As requested, Dr. Greenspan provided that if the lumbar lateral flexion range of motion had not been invalidated, the impairment rating

---

1. The record does not contain any information about this organization.

would be sixteen percent, but stated that he did not feel this rating was warranted. The hearing officer found that Dr. Greenspan had misapplied the AMA Guides in not awarding the additional three percent and found that the revised impairment rating of sixteen percent was not outweighed by the great weight of the other medical evidence and was entitled to presumptive weight.

The appeals panel affirmed the hearing officer's determination of sixteen percent because the panel applied a previous administrative ruling that the straight leg raising test does not invalidate lumbar lateral flexion range of motion, and it found no other basis for Dr. Greenspan's invalidation.

Pacific filed for judicial review of the appeals panel's decision regarding the percentage of impairment. The trial court received evidence at trial and took the matter under advisement. The trial court then sent a letter to the parties outlining the trial court's decision and the reasoning underlying the decision, and requesting the parties to draft and submit a judgment for a seventeen percent impairment rating. Pacific prepared and the trial court, on February 26, 2001, signed a judgment stating

> The Court, after hearing the evidence and arguments of counsel, is of the opinion that the Defendant is entitled to recover of and from the Plaintiff indemnity benefits accruing as a result of a 17% impairment rating.
>
> IT IS THEREFORE ORDERED by the Court that Defendant have and recover indemnity benefits from Plaintiff accruing as a result of a 17% impairment rating.

After Pacific submitted a motion to set aside the judgment as void for not having provided the TWCC with notice of the proposed judgment, on March 19, 2001, the appropriate notice was provided. The TWCC did not intervene to contest the judgment of seventeen percent, and the trial court signed another judgment identical to the first on May 21, 2001.

On June 6, 2001, however, Pacific requested the trial court to file findings of fact and conclusions of law pursuant to Tex.R. Civ. P. 297. Pacific drafted findings and conclusions it believed the evidence supported and submitted them to the trial court. On June 19, 2001, the trial court signed the findings and conclusions submitted by Pacific, which contained a solitary sentence, "Jimmy I. Brown's impairment rating is 13%," repeated under both the headings of "Findings of Fact" and "Conclusions of Law." There were no other findings of fact or conclusions of law issued and no amended or supplemental findings of fact or conclusions of law requested.

Pacific contends the judgment should be reformed to reflect the trial court's Findings of Fact and Conclusions of Law that Brown's impairment rating is thirteen percent. Pacific argues that, pursuant to Tex.R. Civ. P. 299a, when findings of fact obtained pursuant to Tex.R. Civ. P. 297 are contradictory to the judgment, the findings of fact control in appellate matters.

First, Pacific misstates the rule. Rule 299a states in part, "Findings of fact shall not be recited in a judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes."

Findings of fact are ultimate determinations of what specifically occurred, who did or did not do certain acts, what the values of services and property are worth, and the answer to any other specific inquiry necessary to establish conduct or

the existence or nonexistence of a relevant matter. On the other hand, conclusions of law may be a statement of a principle of law or the application of the law to the ultimate facts in the case.

The prohibition of placing the findings of fact in the judgment was intended to require that the judgment state the specific legal status or rights and declare and recognize enforceability of those rights. If a judgment mentions an ultimate fact in such a legal declaration of rights, this is not the equivalent of a finding of fact, but rather is necessary to make a legal declaration of the rights of the parties.

■ This case presents an example of the necessity of the judgment stating what is also an ultimate fact. The ultimate fact was a determination of the percentage of disability the worker suffered during the course of his employment. The judgment recites that ultimate fact in giving legal status to the worker's entitlement to receive benefits on the basis of that degree of disability. Thus, although the ultimate fact is a fact-finding, the application of that fact in the judgment represents a different purpose under the law.

Thus, the inclusion of seventeen percent in the judgment was not a finding of fact stated in the judgment in violation of Rule 299a. Because it was not, we are not presented with the situation Rule 299a resolves, determining whether the findings stated in the judgment or the findings filed pursuant to Rule 297 control for appellate purposes. Therefore, Rule 299a does not apply. Thus, we will not reform the judgment to read thirteen percent under Rule 299a. Pacific's first point of error is overruled.

We are left with a judgment stating the impairment rating as seventeen percent and a Finding of Fact and Conclusion of Law stating the impairment rating as thirteen percent. Thus, the finding and con-clusion made pursuant to Rules 297 and 298 do not support the judgment.

When the findings of fact do not support the judgment, the judgment should either be reformed to conform to the findings, or if appropriate, it should be reversed. *See* 6 MCDONALD & CARLSON: TEXAS CIVIL PRACTICE, § 18:14 (2d ed. 1998 & Supp.2001). TEX.R.APP. P. 43.2 provides that the court of appeals may reverse and remand for further proceedings. When reversing a trial court's judgment, the court need not render the judgment the trial court should have rendered when the interests of justice require a remand for another trial. TEX.R.APP. P. 43.3.

In determining what action is appropriate in this case, we shall consider the peculiar circumstances.

■ Rule 300 states that where conclusions of fact found by the judge are separately stated, the court shall render judgment thereon unless set aside or a new trial is granted. Rule 299 states that when findings of fact are filed by the trial court, they shall form the basis of the judgment on all grounds of recovery or defense. Rule 299a, discussed above, resolves conflicts between factual findings stated in the judgment and findings made pursuant to Rules 297 and 298 in favor of the findings stated separately and at the request of the parties. However, none of these rules appear to contemplate the situation with which we are faced.

While Rule 296 allows parties to request the trial court to state in writing its findings and conclusions, and Rule 297 specifies the time in which the trial court must make such findings after the request has been made, the rules do not prohibit the trial court from stating such findings and conclusions in the absence of such a request. Rule 299a requires that the findings shall not be recited in a judgment and

only resolves conflicts between findings stated in the judgment and findings filed pursuant to Rules 297 and 298; it does not resolve any conflict that may arise between findings and conclusions stated separately, sua sponte, by the trial court before a request under Rule 296.

We recognize the many cases holding that a letter written by the trial court before judgment is not competent evidence of the basis for the trial court's judgment. *See Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872 (Tex. 1990); *Reagan v. Marathon Oil Co.*, 50 S.W.3d 70, 76 (Tex.App.-Waco 2001, no pet.) (stating a prejudgment letter is not evidence of the court's ruling where appellant attempted to import terms into the judgment from the letter). In *Cherokee Water Co.*, the court was not faced with formally filed findings that did not support the judgment, but a conflict between formally filed findings and a prejudgment letter from the trial court regarding the basis of the judgment. *See Cherokee Water Co.*, 801 S.W.2d 872. The court held the letter was not competent evidence of the trial court's basis for judgment and that the letter, written before judgment, was not a finding of fact as contemplated by Rules 296–299 of the Texas Rules of Civil Procedure. *Id.* at 878. The court found there was evidence to support the trial court's decision on other grounds supported by the formal findings. *Id.* The court in *Cherokee* cited *Brazos* for these propositions, explaining why the trial court's letter would not be competent evidence of the grounds for rendering the judgment because the trial court may have in the interim been dissuaded from those grounds and yet entered the same judgment on different grounds. *Brazos River Auth. v. Gilliam*, 429 S.W.2d 949, 953–54 (Tex.Civ.App.-Fort Worth 1968, writ ref'd n.r.e.).

We are not confronted with formal findings even purporting to support the judgment on different grounds. If the trial court's findings contained in the letter in this case are not findings contemplated under Rules 296–299 because the letter was written five days before the judgment was signed, it is at least evidence suggesting that the trial court intended to render judgment for seventeen percent and that the figure, seventeen percent, contained in the judgment was not a clerical error.

■ The purpose of findings and conclusions separately stated is to inform the appellate court of the factual determinations the trial court made, as the finder of fact, and to indicate on what legal grounds the trial court rendered judgment. Such findings assist the appellate court in its review. Such findings also assist the parties in narrowing the focus of their points of error on appeal. However, although such findings might not be stated in writing by the trial court before rendition of judgment, it is inherent in rendering judgment that such findings have already been made mentally by the judge. That is why, when there are no findings filed, it is presumed the judgment is supported by the evidence.

The rules regarding filed findings and conclusions were not intended to provide the trial court with a mechanism to alter its judgment. In this case, we are confronted with a conflict between findings and conclusions stated separately in a letter to the parties before judgment was rendered, requesting that such judgment be prepared for rendition, and findings prepared by the losing party, the party who prepared the judgment stating seventeen percent at the trial court's request, which Pacific admits drafting based not on the letter instructions of the trial court, but on Pacific's own judgment of what findings the evidence supported, pursuant

to Rule 300, the trial court rendered judgment on its conclusions of fact, separately stated, pursuant to Rule 299a, and mailed to the parties, pursuant to Rule 297. The conflict arose when the trial court subsequently signed conflicting findings prepared by Pacific. Even if the trial court's letter to the parties is not competent evidence of the ground for the trial court's ruling, we cannot ignore that conflict presented by the letter.

In this case, we are also confronted with another policy consideration. TEX.R. CIV. P. 820 expressly adopts all portions of the workers' compensation law relating to matters of practice and procedure. One such statute provides that the party initiating the judicial review of an appeals panel decision regarding workers' compensation benefits must file any proposed judgment or settlement with the executive director of the Commission not later than the thirtieth day before the date on which the court is scheduled to render the judgment or approve the settlement. TEX. LAB.CODE ANN. § 410.258 (Vernon Supp.2002). The Commission shall review the proposed judgment or settlement to determine compliance with all appropriate provisions of the law and may intervene not later than the thirtieth day after the date of receipt of the proposed judgment or settlement to inform the court of each reason the Commission believes the proposed judgment or settlement is not in compliance with the law. *Id.* The court shall give full consideration to the information provided by the Commission. *Id.* Any judgment rendered or settlement approved without complying with these requirements is void. *Id.* The statute only refers to proposed judgments and settlements and does not explicitly require that a party provide the TWCC with notice of requested findings of fact and conclusions of law.

TEX.R. CIV. P. 297 requires that judges file findings of fact and conclusions of law within twenty days after a timely request has been filed. Pacific was not required to provide the TWCC with notice of the requested findings of fact, and the findings are not void due to this failure. However, because the TWCC did not receive notice of the judgment that the trial court's Findings of Fact and Conclusion of Law support, to which the judgment might otherwise be modified, it would run contrary to the intent of this statute for us to modify or reform the judgment to conform to the filed findings and affirm the judgment as modified or for us to reverse and render a judgment of thirteen percent in accordance with the filed findings.

Under the circumstances of this case, it is appropriate and in the interest of justice to reverse and remand for a new trial.

In the interest of judicial economy, we will also address Pacific's contention that there is no basis in law to support a judgment of seventeen percent and that the preponderance of the evidence supports thirteen percent. The trial court could not have chosen sixteen percent, and therefore the trial court, as a matter of law, could only have rendered judgment for thirteen percent.

■ When the Commission's final decision is appealed to the courts, it is subject to a modified de novo review by the trier of fact. *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 515 (Tex.1995). The appealing party has the burden of proof by a preponderance of the evidence. TEX. LAB.CODE ANN. § 410.303 (Vernon 1996). Only issues timely presented and preserved through the TWCC dispute process under Chapter 410 of the Texas Labor Code may be presented at a trial under Chapter 410. TEX. LAB.CODE ANN. § 410.302 (Vernon 1996).

In determining the extent of impairment, while the trier of fact is not required to accord any special weight to either the Commission's decision or the rating determination of the designated doctor (that doctor appointed by mutual agreement of the parties or by the Commission to make an independent determination of impairment), the trier of fact must adopt the specific rating of one of the physicians in the case. TEX. LAB.CODE ANN. § 401.011(15) (Vernon Supp.2002), §§ 408.122(c), 408.125, 410.302, 410.306(c) (Vernon 1996); *Garcia*, 893 S.W.2d at 528. All impairment ratings must be assigned by doctors based on a review of medical records and a certifying physical examination performed explicitly to determine MMI and an impairment rating. TEX. LAB. CODE ANN. § 408.124 (Vernon Supp.2002); 28 TEX. ADMIN. CODE § 130.1(b)(2), (4)(B). When the evaluation of impairment rating is performed by a doctor other than the treating doctor, the results of the examination shall be submitted to the treating doctor, who shall then indicate agreement or disagreement with the evaluation. TEX. LAB.CODE ANN. § 408.123 (Vernon 1996).

■ Two doctors suggested a seventeen percent impairment rating. Dr. Greenspan certified an impairment rating of seventeen percent in his initial report to the Commission. However, Dr. Greenspan subsequently revised his report to reflect a thirteen percent impairment rating, based on errors in his calculation that were pointed out to him, and disavowed his initial seventeen percent rating.

In his letter to the Commission commenting on the controversy stemming from Dr. Greenspan's initial seventeen percent rating and Dr. Green's thirteen percent rating, Dr. DeHaan indicated he considered seventeen percent to be more accurate. Dr. DeHaan supported this opinion by doing his own cursory calcula-

tion, using his knowledge of the patient's medical history and some tables, presumably from some edition of the AMA Guides. He demonstrated that with that information, one arrived at an eighteen percent total whole person impairment. Based on this calculation he stated, "I think 17% or 18% would be appropriate, but certainly not 13% which was mentioned previously." Although Dr. DeHaan stated he thought Dr. Greenspan's seventeen percent rating would be more accurate, he also indicated he did not think that either Dr. Green or Dr. Greenspan had adequately addressed Brown's leg pathology.

Because Dr. DeHaan was Brown's treating physician, the Texas Workers' Compensation Act provided that he indicate his agreement or disagreement with the certification and evaluation performed by a doctor other than him. TEX. LAB.CODE ANN. § 408.123. However, nothing in the Act or the TWCC Administrative Rules provides for a treating physician to assign an impairment rating when the treating physician is not the certifying doctor. In other words, a treating physician must meet the same requirements as any other physician in order to assign an impairment rating. These requirements include more than having examined the employee at some point in time.

The requirements for assigning an impairment rating include performing a complete medical examination of the employee for the explicit purpose of determining MMI, 28 TEX. ADMIN. CODE § 30.1(b)(4)(B) (2002); certifying the employee has reached MMI, 28 TEX. ADMIN. CODE § 130.1(c)(2) (2002); identifying, documenting, and analyzing objective clinical or laboratory findings of permanent impairment for the current compensable injury, 28 TEX. ADMIN. CODE § 130.1(c)(3) (2002); comparing the results of the analysis with

the impairment criteria and providing the following: a description and explanation of specific clinical findings related to each impairment, including zero percent impairment ratings, a description of how the findings relate to and compare with the criteria described in the AMA Guides, and explaining any inability to obtain the required measurements, 28 TEX. ADMIN. CODE § 130.1(c)(3)(D) (2002). The doctor assigning the impairment rating shall assign one whole body impairment rating for the current compensable injury. 28 TEX. ADMIN. CODE § 130.1(c)(3)(E).

In addition, in order to certify MMI and assign an impairment rating for the current compensable injury, the certifying doctor is required to complete, sign, and submit the report of medical evaluation and a narrative report to the Commission and the parties involved within a certain time frame. 28 TEX. ADMIN. CODE § 130.1(d). The narrative report must include the date of the certifying examination; the date of MMI; findings of the certifying examination, including both normal and abnormal findings and an explanation of the analysis performed to find whether MMI was reached; a narrative history of the medical condition that outlines the course of the injury and correlates the injury to the medical treatment; the current clinical status; diagnosis and clinical findings of permanent impairment as stated above; and the edition of the AMA Guides used in assigning the impairment rating. *Id.*

There is no indication that Dr. DeHaan assigned a seventeen percent impairment rating and no evidence that Dr. DeHaan or his letter met the requirements for assigning Brown an impairment rating. Because a doctor assigning an impairment rating is required to assign one whole body impairment rating, Dr. DeHaan's statement that he thought seventeen or eighteen percent would be appropriate was not a proper assignment. Nor would his statement that he considered seventeen percent to be more accurate constitute a rating, as it indicates only his opinion as to which previously assigned rating was more accurate. The only percentage Dr. DeHaan mentioned that was supported by his own calculations was the eighteen percent whole person impairment.

Besides the overwhelming indication, from the context of the letter, that Dr. DeHaan intended to express his concern regarding both doctors' ratings and his opinion as to which was more accurate and did not intend to assign a rating himself, there is no evidence that Dr. DeHaan met the requirements for assigning Brown an impairment rating. There is no evidence Dr. DeHaan based his calculation of impairment on both the employee's medical records and a certifying examination he performed explicitly for determining MMI, as no such examination is mentioned. Dr. DeHaan's letter does not include the substantive requirements of the narrative report. There is also no indication that Dr. DeHaan's letter was submitted to the insurance carrier.

The seventeen percent mentioned by Dr. DeHaan could not constitute a specific rating the trial court could adopt, nor could Dr. DeHaan's letter constitute an assignment of impairment rating. It could only serve to provide the trial court information with which to evaluate the assigned ratings of Dr. Green and Dr. Greenspan.

Pacific contends that because the trial court had to adopt a rating assigned by a doctor in the case, and because the only doctors assigning a rating both assigned thirteen percent ratings, the trial court, as a matter of law, could only have found an impairment rating of thirteen percent. In evaluating this contention, we must necessarily decide whether the trial court would have the authority to determine that the

percentage of impairment rating was a number other than one assigned by one of the doctors in the case.

The Texas Workers' Compensation Act requires the trial court to adopt one of the impairment ratings assigned by the doctors in the case. TEX. LAB.CODE ANN. § 410.306(c). The Act also provides that the Commission must adopt the impairment rating of one of the doctors, giving the designated doctor's rating presumptive weight. TEX. LAB.CODE ANN. § 408.125(c) (Vernon Supp.2002). While this indicates the rating adopted by the Commission will normally be one available for the trial court to adopt, the Act does not provide that the trial court may adopt the impairment rating assigned by the Commission when its impairment rating is different than those assigned by the doctors. Therefore, if the trial court has the authority to determine that the percentage of impairment is other than that assigned by one of the doctors, it cannot do so based solely on the ground that the Commission has introduced a different impairment rating.

The court in *Garcia*, 893 S.W.2d 504, stated that the jury, presented with assigned ratings of ten, fourteen, and twenty, would have to return one of those numbers, not sixteen percent, as its verdict. However, the court in *Old Republic Ins. Co. v. Rodriguez*, 966 S.W.2d 208 (Tex. App.-El Paso 1998, no pet.), found that the example provided in *Garcia* addressed compromise verdicts and was not intended to prohibit the fact-finder from accepting a doctor's findings with a correction for a minor clerical error for which evidence was presented. In *Rodriguez*, the assigning doctor had passed away and another doctor, testifying as to the findings on which the assignment was based, agreed that a clerical error had been made. *Id.* at 210. The assigning doctor had added two numbers together instead of applying the AMA Guides to their addition, which would have resulted in a different sum. *Id.* The court in *Rodriguez* stated that such a minor clerical error would not render an assignment invalid when the substance of the evaluation and the resulting impairment rating were not shown to be invalid pursuant to AMA Guides. *Id.*

In the present case, evidence was presented to the trial court regarding the Commission's belief that Dr. Greenspan had incorrectly invalidated the left lateral flexion measurements and that without such invalidation Dr. Greenspan had said the impairment rating would have been sixteen percent. The error, if there was one, would have been made either in applying the Administrative Code or the AMA Guides to the numerical results obtained in the physical examination. It is possible that this type of error would not involve the performance of the clinical examination or the professional judgment of the doctor, only the application of the Code and the Guides to the clinical results. These are tasks which may be objectively evaluated and corrected and are thus analogous to the clerical errors corrected by the jury in *Rodriguez*. If the trial court finds, based on evidence in the record, that Dr. Greenspan miscalculated based on the requirement of the Administrative Code and the AMA Guides, the court may correct such error in concluding the proper impairment rating. Without further determinations by the trial court, we cannot hold that the trial court, as a matter of law, could have only found a thirteen percent impairment rating based on the record in this case.

In the interest of justice, the judgment of the trial court is reversed, and the case is remanded for a new trial.