Opinion issued February 11, 2010







 









In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00233-CV






AMERICAN ZURICH INSURANCE COMPANY, Appellant


V.


DANIEL SAMUDIO, Appellee






On Appeal from the 127th District Court

Harris County, Texas

Trial Court Cause No. 2006-18753




 



O P I N I O N

 Appellant, Zurich American Insurance Company (Zurich), a workers'
compensation carrier, appeals from the trial court's judgment awarding attorney's fees
to Daniel Samudio, appellee, and dismissing its appeal for lack of subject matter
jurisdiction. Zurich had filed a petition for judicial review of a final decision by the
Texas Department of Insurance Division of Workers' Compensation (Division) that
held Daniel Samudio, appellee, had a 20 percent impairment rating. In three issues,
Zurich asserts that (1) the trial court had jurisdiction to determine whether Samudio's
impairment rating complied with the Texas Workers' Compensation Act, (2)
Samudio's plea to the jurisdiction, taken to its logical extension, would obviate
summary judgment practice, and (3) the trial court should not have ordered Zurich to
pay Samudio's attorneys' fees. We conclude that (1) the trial court properly
dismissed Zurich's judicial review action because it did not have jurisdiction under
the Texas Workers Compensation Act to effect the remedies sought by Zurich, (2)
a plea to the jurisdiction is a proper procedural vehicle for challenging a trial court's
subject matter jurisdiction, and (3) the trial court properly ordered Zurich to pay
Samudio's reasonable and necessary attorney's fees because Samudio was the
prevailing party in the lawsuit.

 We affirm.

Background

 While in the course of his employment, Samudio sustained a compensable
injury to his back when he fell off a ladder. Samudio had four surgeries to repair his
back, including a laminectomy and a multilevel spinal fusion. Samudio's surgeons
did not order preoperative flexion or extension x-rays before surgically operating on
his back. 

 His employer carried worker's compensation insurance coverage through
Zurich. After his injury, Samudio filed a workers' compensation claim with the
Division, the Texas administrative agency that administers the Texas Workers'
Compensation Act. (1) Under the Act, an injured worker may become entitled to receive
impairment income benefits, which are based on an impairment rating assigned by a
physician. (2) In determining the existence and degree of an injured worker's permanent
impairment, the Division is required to use the fourth edition of the Guides to the
Evaluation of Permanent Impairment, published by the American Medical
Association (AMA). (3) 

 The principal methodology found in the fourth edition of the Guides is its
injury model, which uses objectively verifiable evidence to place patients into one of
eight diagnosis-related estimate (DRE) categories. (4) Depending on which DRE
category the patient falls into, the examining doctor will assign the patient a particular
impairment rating. In cases where spinal fusion surgery is performed, the Guides
require the examining doctor to base the rating on pre-operative flexion and extension
roentgenograms (x-rays). (5) 

 Confusion existed in the medical community regarding how to rate claimants
who lacked preoperative flexion and extension x-rays. To address this confusion, the
Division issued Advisory 2003-10 and Advisory 2003-10B, in 2003 and 2004,
respectively. The second advisory added an additional section to the first. The
advisories attempted to provide an alternative standard for assessing a DRE category
in cases where there are no preoperative x-rays. (6)

 The advisories included a controversial provision that stated "[i]f preoperative
x-rays were not performed, the rating may be determined using the following
criteria: . . . b. Multilevel fusion meets the criteria for DRE Category IV, Structural
Inclusions, as this multilevel fusion is equivalent to 'multilevel spine segment
structural compromise' per DRE IV." In other words, under the Division's
Advisories, an examining doctor could include evidence of a spinal fusion surgery in
assessing which DRE category the claimant belonged. 

 The Division appointed Dr. Gason Machado, M.D., to act as a designated
doctor for assignment of Samudio's impairment rating. He conducted his
examination in 2004. In his "Report of Medical Evaluation" that he distributed to the
Division, Dr. Machado stated that used the Guides to calculate Samudio's impairment
rating as 20 percent based on qualifications found in DRE Category IV. In a later
"Letter of Clarification," Dr. Machado clarified that his evaluation was also based
upon the Advisories. He stated that he had used the Advisories because the only set
of x-rays was a series of lumbar x-rays from 2002 that were inconclusive. As there
were no pre-operative flexion or extension x-rays of Samudio, and because Dr.
Machado believed the set of x-rays taken of Samudio were inconclusive, in
accordance with Advisory 2003-10 and Advisory 2003-10B, the doctor included
Samudio's spinal fusion surgery as a factor in his conclusion that Samudio fell within
DRE Category IV. Dr. Machado explained:

TWCC Advisory 2003-10 and Advisory 2003-10b both state that when
examining an injured worker who has had spinal surgery, the rating is
to be determined by preoperative x-ray tests for motion segment
integrity. If those x-rays are not available, the type of surgery can be
used to rate the individual. In this case, the pre-operative films do not
appear to be motion studies; therefore, I believe I was correct in using
the type of surgery to determine the impairment rating.


 In November 2005, the Division conducted a benefit contested case hearing
(the Hearing) to resolve two issues. The Division ruled in favor of Zurich on the first
issue by determining Zurich's contest of the impairment rating was timely. No one
challenges that ruling in this case. 

 The second issue concerned Samudio's "impairment rating." Zurich disputed
Dr. Machado's 20 percent impairment rating on the ground that the doctor used the
Division's Advisories to help formulate his impairment rating. In support of its
position, Zurich offered a letter from John Obermiller, M.D., who criticized Dr.
Machado's impairment rating, stating that Dr. Machado's evaluation was "not in
accordance with the AMA Guides" and that Dr. Machado was "confusing the
declarations of TWCC advisory 2003-10b . . . ." Dr. Obermiller expressly stated in
his letter that he was not providing an impairment rating on Samudio, but was instead
explaining why, in his opinion, Dr. Machado's opinion was erroneous. This was the
only evidence Zurich provided to the Division to contest Dr. Machado's impairment
rating. Zurich did not present an alternative impairment rating. 

 After considering all the evidence including Dr. Obermiller's comments, the
Hearing Officer concluded that Samudio's impairment rating was 20 percent based
on Dr. Machado's 20 percent impairment rating certification. The Hearing Officer
issued a written opinion with his findings and one of those findings specifically
determined that there was only one impairment rating. Zurich appealed the decision at the Hearing to the Division's appeals panel. 
In February 2006, the Division's appeals panel notified the parties that the Hearing
Officer's decision was final.

 In March 2005, Zurich appealed the Division's decision to the trial court. In
its original petition, Zurich asked the trial court to either hold Samudio had no
impairment rating at all, or determine that Samudio's impairment rating was 10
percent rather than 20 percent. It also requested that the trial court abate proceedings
until the Austin Court of Appeals issued a final ruling in Lumbermens Mut. Co.,
regarding the validity of Advisories 2003-10 and 2003-10B. In October 26, 2006, the
Austin Court of Appeals held that the advisories were invalid and enjoined their
continued use by the Division. (7) Following the Texas Supreme Court's denial of the
petition challenging the Lumbermens decision, the Division issued Texas Department
of Insurance Commissioners' Bulletin No. B-0033-07 in July 2007, which provides
that Advisories 2003-10 and 2003-10B "shall no longer be used in determining
impairment ratings." (8) 

 In August 2007, Samudio filed a plea to the jurisdiction with a request that the
trial court dismiss Zurich's lawsuit for lack of subject matter jurisdiction. Samudio
contended that Zurich failed to raise a justiciable controversy because the trial court
was required to adopt an impairment rating presented to the Division in the
underlying proceedings before the agency, and only one rating, the 20 percent rating,
had been introduced at the Division level. In October 2007, the trial court granted
Samudio's plea to the jurisdiction and dismissed the case.

 In February 2008, Samudio filed an additional motion for attorney's fees
pursuant to section 408.221 of the Labor Code. (9) Soon afterwards, the trial court
rendered a final judgment in Samudio's favor, expressly noting that Samudio was "the
prevailing party on all issues" and noting that it would enter a separate order
regarding attorney's fees. In March 2008, the trial court awarded Samudio $29,246
in attorney's fees through the date of the final judgment, plus appellate fees of up to
$42,000 on the condition that Samudio prevail on appeal. Zurich subsequently
appealed to this court.

The Trial Court's Jurisdiction

 In Zurich's first issue, it asserts the trial court erred in granting Samudio's plea
to the jurisdiction because the trial court had subject matter jurisdiction over the
lawsuit.

 A. Plea to the Jurisdiction

 Subject matter jurisdiction requires that the party bringing the suit have
standing, that there be a live controversy between the parties, and that the case be
justiciable. State Bar of Tex. v. Gomez, 891 S.W.2d 243, 245 (Tex. 1994). If the
district court lacks the power to effect a remedy that would resolve the dispute at
issue, the case does not present a justiciable issue. Di Portanova v. Monroe, 229
S.W.3d 324, 330 (Tex. App.-- Houston [1 Dist.] 2006, pet. denied). 

 "The absence of subject-matter jurisdiction may be raised by a plea to the
jurisdiction, as well as by other procedural vehicles, such as a motion for summary
judgment." Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000)
(footnotes omitted); see also Houston Mun. Employees Pension Sys. v. Ferrell, 248
S.W.3d 151, 156 (Tex. 2007) ("A party may contest a trial court's subject matter
jurisdiction by filing a plea to the jurisdiction."). A plea to the jurisdiction is a
dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. 
Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004); see Bland Indep. Sch.
Dist., 34 S.W.3d at 554. The purpose of a dilatory plea is not to force the plaintiff
to preview its case on the merits, but to establish a reason why the merits of the case
should not be reached. Bland Indep. Sch. Dist., 34 S.W.3d at 554. 

 A plea to the jurisdiction can challenge either the sufficiency of the plaintiff's
pleadings or the existence of jurisdictional facts. See Tex. Dep't of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 226-27 (Tex. 2004). When a plea to the jurisdiction
attacks the pleadings, the issue turns on whether the pleader has alleged sufficient
facts to demonstrate subject matter jurisdiction. Id. at 226. In such cases, we
construe the pleadings liberally in the plaintiff's favor and look for the pleader's
intent. Id. When the pleadings neither allege sufficient facts nor demonstrate
incurable defects, the plaintiff should usually be afforded an opportunity to amend. 
Id. at 226-27. However, if the pleadings affirmatively negate jurisdiction, then the
plea to the jurisdiction may be granted without leave to amend. Id. When a plea to
the jurisdiction challenges the existence of jurisdictional facts, a court may consider
evidence in addressing the jurisdictional issues. Id. at 227. If the evidence reveals
a question of fact on the jurisdictional issue, the trial court cannot grant the plea, and
the issue must be resolved by a fact finder. Id. at 227-28. However, if the relevant
evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the
trial court rules on the plea to the jurisdiction as a matter of law. Id. at 228.

 In reviewing a trial court's granting of a plea to the jurisdiction, we do not
look to the merits of the plaintiff's case, but consider only the pleadings and the
evidence pertinent to the jurisdictional inquiry. Id. at 227. The plaintiff bears the
burden to allege facts affirmatively demonstrating the trial court's jurisdiction to
hear a case. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446
(Tex. 1993). If a plaintiff pleads facts that affirmatively demonstrate an absence of
jurisdiction and the jurisdictional defect is incurable, then the cause is properly
dismissed. See Miranda, 133 S.W.3d at 227. However, when the plaintiff fails to
plead facts that establish jurisdiction, but the petition does not affirmatively
demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency,
and the plaintiff should be afforded the opportunity to amend. Id. at 226-27. 

 This standard of review generally mirrors that of a summary judgment under
Texas Rule of Civil Procedure 166a(c). Miranda, 133 S.W.3d at 228. To prevail on
a plea to the jurisdiction, the party asserting the plea "must show that even if all the
allegations in the plaintiff's pleadings are taken as true, there is an incurable
jurisdictional defect apparent from the face of the pleadings, rendering it impossible
for the plaintiff's petition to confer jurisdiction on the court." Bland Indep. Sch.
Dist., 34 S.W.3d at 554. Whether a court has subject matter jurisdiction over a case
is a legal question and, therefore, we review a trial court's ruling on a plea to the
jurisdiction under a de novo standard of review. Miranda, 133 S.W.3d at 226;
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). A trial court
properly dismisses claims over which it has no subject matter jurisdiction. Thomas
v. Long, 207 S.W.3d 334, 338 (Tex. 2006). 

 B. Impairment Ratings


 A workers' compensation claimant is eligible to receive impairment income
benefits if he continues to have an impairment after reaching maximum medical
improvement (MMI). Tex. Lab. Code. Ann. § 408.121. MMI is defined as the
earlier of "the earliest date after which, based on reasonable medical probability,
further material recovery from or lasting improvement to an injury can no longer
reasonably be anticipated" or "the expiration of 104 weeks from the date on which
income benefits begin to accrue." Id. § 401.011(30)(A), (B) (Vernon Supp. 2009). 
In order to obtain impairment benefits, an employee must be certified by a doctor as
having reached MMI and must be assigned an impairment rating by a certifying
doctor, the percentage of which expresses the extent to which the claimant's injury
permanently impaired his body. Id. §§ 401.011(24) (Vernon Supp. 2009),
408.123(a) (Vernon 2006). 

 All impairment ratings must be assigned by doctors based on a review of
medical records and a certifying physical examination performed explicitly to
determine MMI and an impairment rating. See Tex. Lab. Code Ann. § 408.124
(Vernon 2006); 28 Tex. Admin. Code § 130.1(b)(2), (4)(B) (West 2009); Pac.
Employers Ins. Co. v. Brown, 86 S.W.3d 353, 360 (Tex. App.--Texarkana 2002, no
pet.). The statute appears to contemplate that physicians for the claimant and the
carrier may each make an impairment determination. Tex. Workers' Comp. Comm'n
v. Garcia, 893 S.W.2d 504, 514 (Tex. 1995). If their findings conflict, the claimant
must be examined by a "designated doctor" selected by mutual agreement of the
parties or by the Division. Id. (citing Tex. Lab. Code. Ann. § 408.125 (Vernon
2006)). The designated doctor's rating is binding on the Division if he or she was
selected by the parties, while the rating has presumptive weight if the doctor was
selected by the Division. Id. In the latter case, the presumption is overcome only if
the great weight of the other medical evidence is to the contrary, in which case the
Division must adopt the impairment rating of "one of the other doctors." Id.

 The requirements for assigning an impairment rating include performing a
complete medical examination of the employee for the explicit purpose of
determining MMI, 28 Tex. Admin. Code § 130.1(b)(4)(B) (West 2009); certifying
the employee has reached MMI, 28 Tex. Admin. Code § 130.1(b)(2) (West 2009); 
identifying, documenting, and analyzing objective clinical or laboratory findings of
permanent impairment for the current compensable injury, 28 Tex. Admin. Code
§ 130.1(c)(3) (West 2009); comparing the results of the analysis with the impairment
criteria and providing the following: a description and explanation of specific
clinical findings related to each impairment, including zero percent impairment
ratings, a description of how the findings relate to and compare with the criteria
described in the AMA Guides, and explaining any inability to obtain the required
measurements, 28 Tex. Admin. Code § 130.1(c)(3)(D) (West 2009). The doctor
assigning the impairment rating shall assign one whole body impairment rating for
the current compensable injury. 28 Tex. Admin. Code § 130.1(c)(3)(E) (West
2009). 

 In addition, in order to certify MMI and assign an impairment rating for the
current compensable injury, the certifying doctor is required to complete, sign, and
submit the report of medical evaluation and a narrative report to the Division and the
parties involved within a certain time frame. Id. § 130.1(d). The narrative report
must include the date of the certifying examination; the date of MMI; findings of the
certifying examination, including both normal and abnormal findings and an
explanation of the analysis performed to find whether MMI was reached; a narrative
history of the medical condition that outlines the course of the injury and correlates
the injury to the medical treatment; the current clinical status; diagnosis and clinical
findings of permanent impairment as stated above; and the edition of the AMA
Guides used in assigning the impairment rating. Id.

 C. Disputing Impairment Ratings - Administrative Process

 The Workers' Compensation Act vests the Division with exclusive jurisdiction
to determine a claimant's entitlement to medical benefits. In re Liberty Mut. Fire
Ins. Co., 295 S.W.3d 327, 328 (Tex. 2009). Under the "exclusive jurisdiction
doctrine," the legislature grants the Division the sole authority to make the initial
determination in a medical benefit dispute. Subaru of Am. v. David McDavid Nissan,
84 S.W.3d 212, 221 (Tex. 2002). If an agency has exclusive jurisdiction, a claimant
must exhaust all administrative remedies in the agency before filing a claim in the
trial court. See In re Entergy Corp., 142 S.W.3d 316, 321-22 (Tex. 2004); Subaru,
84 S.W.3d at 221. 

 In instances where the parties dispute the impairment rating, the Texas
Workers' Compensation Act provides a three-step administrative process for
resolving disputed issues. See Tex. Lab. Code Ann. §§ 410.021-.209 (Vernon 2006
& Vernon Supp. 2009) (first tier: benefit review conference; second tier: contested
case hearing; third tier: review by administrative appeals panel); Tex. Dept. of Ins.,
Div. of Workers' Comp. v. Jackson, 225 S.W.3d 734, 736 (Tex. App.--Eastland
2007, no pet). Compliance with each step is a prerequisite to participation in the
next level, and subsequent proceedings are limited by the scope of the prior
proceeding. Jackson, 225 S.W.3d at 736.

 The Division's first tier, the benefit review conference, is an informal dispute
resolution proceeding. Tex. Lab. Code Ann. § 410.021. If the conference is
unsuccessful, the parties proceed to a contested case hearing administered by a
hearing officer. See id. §§ 410.151-.169. The hearing officer is the only individual
with the authority to excuse exhaustion of administrative remedies upon a showing
of good cause. Jackson, 225 S.W.3d at 736. A party dissatisfied with the hearing
officer's decision can appeal to the Division's appeals panel, which is the third and
final tier in the administrative process. See Tex. Lab. Code Ann. § 410.202
(Vernon 2006); see id. at 737 (noting legislature has made clear that it intended for
hearing officer to make initial decision in workers' compensation dispute and that
all subsequent proceedings are limited to review of that decision). The request for
appeal and the opposing party's response must clearly and concisely rebut or support
the decision of the hearing officer on each issue on which review is sought. Tex.
Lab. Code Ann. § 410.202(c). The Division appeal is not a de novo trial, but rather
is limited to a review of the record from the contested case hearing. See id.
§ 410.203(a). After considering briefs and the record from the contested case
hearing, the Division's appeals panel may affirm the decision of the hearing officer,
reverse and render a new decision, or remand no more than one time to the hearing
officer for further consideration and development of the record. Id. § 410.203(6)(c);
Garcia, 893 S.W.2d at 515. The Texas Workers' Compensation Act provides that
the Division must adopt the impairment rating of one of the doctors, giving the
designated doctor's rating presumptive weight. Tex. Lab. Code Ann. § 408.125(c)
(Vernon 2006); Brown, 86 S.W.3d at 359.

 D. Trial Court's Jurisdiction under Texas Workers' Compensation
Act

 

 An agency's enabling legislation determines the procedures for obtaining
review of agency decision. Harris County Emergency Servs. Dist. 1 v. Miller, 122
S.W.3d 218, 222 (Tex. App.--Houston [1st Dist.] 2003, no pet.) (citing Tex. Natural
Res. Conservation Comm'n v. Sierra Club, 70 S.W.3d 809, 811 (Tex. 2002)). 
Parties have no absolute right to challenge an administrative order; the right of
judicial review arise only when (1) a statute creates it, (2) the order adversely affects
a vested property right, or (3) the order otherwise violates a constitutional right. Id. 
 The legislature, through the Texas Workers' Compensation Act, requires a
modified trial de novo procedure for judicial review of Division actions involving
"eligibility for . . . income . . . benefits." Tex. Lab. Code Ann. § 410.301(a);
Rodriguez v. Serv. Lloyds Ins. Co., 997 S.W.2d 248, 256 (Tex. 1999); Garcia, 893
S.W.2d at 528-30. Modified de novo review means: (1) the trial court is informed
of the Division Appeals Panel's decision; (2) evidence of the extent of impairment
is limited to that presented to the Division, unless the court makes a threshold
finding that the claimant's condition has substantially changed; and (3) the court is
required to adopt the specific impairment rating arrived at by one of the physicians
in the case. Tex. Lab. Code Ann. §§ 410.304, 410.306-.307 (Vernon 2006); Garcia,
893 S.W.2d at 528. Here, because no one claims Samudio's condition has changed,
evidence under the second prong would be limited to that presented to the division. 
See id.

 In a judicial review case, the Texas Workers' Compensation Act requires that
the trial court adopt one of the impairment ratings assigned by the doctors in the
case. Tex. Lab. Code Ann. §§ 401.011(15) (Vernon Supp. 2009), 408.125(c),
410.306(c); Garcia, 893 S.W.2d at 528 (trier of fact must adopt specific rating of one
of physicians in case); Bell v. Zurich Am. Ins. Co., No. 05-09-00284-CV, 2009 WL
3353638, at *4 (Tex. App.--Dallas, Oct. 20, 2009, no pet.) ("In a judicial review
case, the court or jury must adopt the specific impairment rating of one of the
physicians in the underlying administrative case."); Brown, 86 S.W.3d at 360. The
party appealing the decision on an issue described in Section 410.301(a) has the
burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann.
§ 410.303 (Vernon 2006); Brown, 86 S.W.3d at 359. Only issues presented and
preserved through the Division dispute process under Chapter 410 of the Texas
Labor Code may be presented at trial. See Tex. Lab. Code Ann. § 410.302(b)
(Vernon 2006). 

 E. No Jurisdiction to Effect Remedies Sought

 

 In its first issue, Zurich asserts the trial court had jurisdiction to determine
whether Samudio's impairment rating complied with the Texas Workers'
Compensation Act. The only issue disputed between the parties to be resolved by
the trial court through judicial review was the extent of impairment suffered by
Samudio. A dispute regarding the extent of impairment suffered by Samudio goes
directly to the issue of Samudio's eligibility for income benefits. The trial court or
jury, therefore, must review the Division's decision regarding Samudio's impairment
rating under a modified de novo review, and only has jurisdiction to adopt an
impairment rating assigned by a doctor in the underlying administrative case. See
Tex. Lab. Code Ann. §§ 410.301(a), 410.306(c); Rodriguez, 997 S.W.2d at 256;
Garcia, 893 S.W.2d at 528; Bell, 2009 WL 3353638, at *4; Brown, 86 S.W.3d at
360. The requirement that the impairment rating match a physician's findings is part
of the substantive statutory scheme. Garcia, 893 S.W.2d at 528 ("Because the
ultimate impairment rating must match one of the doctor's findings, the disputed
question of fact on appeal can only be which doctors' rating should prevail."); Fin.
Ins. Co. v. Ragsdale, 166 S.W.3d 922, 928 (Tex. App.--El Paso 2005, no pet.) ("It
is clear from the facts presented to us that the only issue under dispute between the
parties and to be resolved by the jury was the extent of impairment suffered by
Appellee. The jury was required to adopt the specific rating of one of the physicians
in the case."); Bell, 2009 WL 3353638, at *4 ("In other words, the requirement that
the impairment rating match one of the physicians' findings is part of the substantive
statutory scheme."). 

 In its original petition, Zurich asked that the court either adopt the 10 percent
rating based upon Dr. Obermiller's report, or adopt a zero percent rating by holding
Dr. Machado's rating "be set aside and held for not [sic]." On appeal, Zurich
suggests as a remedy that the court could also use an expert witness, or Dr. Machado
himself, to help the fact finder calculate an entirely new impairment rating. The trial
court does not have the jurisdiction to effect any of these remedies.

 First, the trial court does not have the jurisdiction to select the 10 percent
rating suggested by Dr. Obermiller in his report. Dr. Obermiller's letter does not
meet the requirements that an impairment rating be assigned by doctors based on a
review of medical records, a certifying physical examination, and be performed
explicitly to determine MMI and an impairment rating. See Tex. Lab. Code. Ann.
§ 408.124; 28 Tex. Admin Code § 130.1(b)(4); Brown, 86 S.W.3d at 360 (where
doctor only intended to express concern regarding doctors' ratings and did not intend
to assign rating himself, no evidence that doctor met requirements for assigning
claimant impairment rating). Perhaps more importantly than the fact that Dr.
Obermiller's opinion did not comply with the code, it is undisputed that Dr.
Obermiller was not attempting to provide evidence of Samudio's impairment rating. 
Dr. Obermiller wrote:

I am not providing an impairment rating on this individual. This review
has been conducted to determine, in my opinion that the process set
forth in the [Guides] was followed. I have not seen or examined this
claimant. I have relied solely on information provided by [Zurich] in
presenting my opinion. 

Dr. Obermiller's letter specifically stated that he was "not providing an impairment
rating," that he had "not seen or examined [Samudio]," and that he had "relied solely
on information provided by [Zurich]." Dr. Obermiller himself characterized his role
as impeachment evidence only in that he was determining whether Dr. Machado
followed the proper process set forth in the Guides. 

 In contrast, it is undisputed that Dr. Machado was providing an impairment
rating under the Division's then existing requirements. When the 2005 contested
case hearing took place between Samudio and Zurich, the Austin Court of Appeals
had not yet issued its decision in Lumbermens, and Advisories 2003-10 and 2003-10b were still in effect. Lumbermens was not decided, and the Bulletin was not
released, until after Zurich exhausted its administrative remedies in the Division. 
Until it released Bulletin No. B-0033-07, the Division required certifying physicians
to consider the effect of the Advisories in calculating an impairment rating for a
claimant who had undergone a multilevel spinal fusion. See, e.g., Div. Workers'
Comp., Appeal No. 061940, 2006 WL 3187285, *2 (Oct. 25, 2006) (examining
doctor was "forced to adhere to Advisory 2003-10"); Div. Workers' Comp., Appeal
No. 061713-s, 2006 WL 3064080, *5 (Oct. 20, 2006) (noting that "the Division
Advisories must be considered as part of the certifying doctor's process in
determining the appropriate [impairment rating]"); Tex. Workers' Comp. Comm'n,
Appeal No. 051587, 2005 WL 2507672, *1 (Aug. 22, 2005) (noting the Division
"advisories must be considered as part of the certifying doctor's process in
determining the appropriate [impairment rating]"). 

 Unlike Dr. Obermiller, Dr. Machado was appointed as the designated doctor
to provide an impairment rating; he examined Samudio; he examined Samudiio's
medical records; and he did provide an impairment rating for Samudio, albeit one
that was later determined by the Lumberman's decision to lack conformity with the
Guides. See Lumbermens, 212 S.W.3d at 876-77. As Dr. Obermiller's opinion
undisputedly was impeachment evidence only and did not constitute an impairment
rating, the only impairment rating presented to the Division was Dr. Machado's 20
percent rating. As Dr. Machado's impairment rating was the only rating in evidence
before the Division, evidence of Samudio's impairment rating was limited to Dr.
Machado's impairment rating on judicial review and the trial court could adopt only
Dr. Machado's rating. See Tex. Lab. Code Ann. § 410.306(c) (evidence of extent
of impairment rating limited to that presented to Division); see also Garcia, 893
S.W.2d at 528 (fact finder may not find impairment rating other than one of
percentages in evidence before Division); Ausaf v. Highlands Ins. Co., 2 S.W.3d
363, 367 (Tex. App.--Houston [1st Dist.] 1999, pet. denied) (amended certification
of maximum medical improvement inadmissible in district court because it was not
first presented to Division). 

 Second, the trial court does not have the jurisdiction to craft a new impairment
rating, based upon an expert's testimony, or testimony by Dr. Machado. The
impairment rating imposed by the trial court must be one of the percentages in
evidence before the Division, unless the trial court makes a threshold finding that the
claimant's condition has substantially changed, or there was a clerical error made in
the determination of the impairment rating. See Tex. Lab. Code. Ann.
§§ 410.306(c), 410.307(a); Garcia, 893 S.W.2d at 528 (holding fact finder or trial
court may not craft its own impairment rating; noting that jury, presented with
assigned ratings of 10, 14, and 20, would have to return one of those numbers, not
16 percent as crafted by the jury); see also, e.g., Old Republic Ins. Co. v. Rodriguez,
966 S.W.2d 208 (Tex. App.--El Paso 1998, no pet.) (finding that example provided
in Garcia addressed compromise verdicts and was not intended to prohibit fact
finder from accepting doctor's findings with correction for minor clerical error for
which evidence was presented). Because none of the parties here contend that
Samudio's condition changed or that Dr. Machado made a clerical error, the trial
court did not have the jurisdiction to allow the fact finder to craft a new impairment
rating, nor did it have the jurisdiction to remand it to the Division. See Bell, 2009
WL 3353638 at *4 (labor code does not permit reconsideration or reopening of
evidence of claimant's impairment rating); Tex. Workers' Comp. Comm'n v. Harris
County, 132 S.W.3d 139, 146 (Tex. App.--Houston [1st Dist.] 2004, no pet.)
("Although we can understand why it might seem appropriate to remand the issue
of appellant's impairment rating to the appeals panel, no mechanism in the labor
code allows for such a remand."); Tex. Workers' Comp. Comm'n v. Tex. Mut. Ins.
Co., 119 S.W.3d 886, 887 (Tex. App.--Dallas 2003, no pet.) ("[N]othing in the labor
code allows the trial court to send matters back to the appeals panel."). 

 Finally, the trial court does not have the jurisdiction to "set aside" Dr.
Machado's impairment rating and find Samudio is entitled to no benefits by giving
him a zero percent rating. It only has the jurisdiction to allow a fact finder to choose
either Dr. Machado's rating, or an alternative rating that was presented to the
Division. See Tex. Lab. Code Ann. §§ 410.301(a), 410.306(c); Garcia, 893 S.W.2d
at 528; Bell, 2009 WL 3353638, at *4; Brown, 86 S.W.3d at 360. 

 Although Lumbermens held the Advisories were invalid, the decision does
not affect our jurisdictional analysis here, but instead would become pertinent on the
merits if the trial court had two or more ratings from which to choose. See Lamar
Univ. v. Doe, 971 S.W.2d 191, 195 (Tex. App.--Beaumont 1998, no pet.) ("When
confronted with a plea to the jurisdiction which contends that the trial court is
without power to proceed on the subject matter in question, the question of whether
a genuine issue of material fact exists as to the merits of plaintiff's lawsuit is
immaterial. The merits of plaintiffs' suit only become ripe for consideration after
the trial court determines subject matter jurisdiction.") (emphasis in original); see
also Bell, 2009 WL 3353638 at *3 (holding trial court that had two alternative
ratings from which to choose properly reversed Division's impairment rating because
Division's rating was decided using Advisories, as compared to alternative
impairment rating that did not use the Advisories as guidance). 

 By requesting a zero rating, Zurich's pleadings ask the trial court to craft or
select an impairment rating not in evidence before the Division, which it cannot do. 
See Tex. Lab. Code Ann. §§ 410.301(a), 410.306(c); Garcia, 893 S.W.2d at 528;
Bell, 2009 WL 3353638, at *4; Brown, 86 S.W.3d at 360. Because the trial court
does not have jurisdiction to effect any of the remedies sought by Zurich, we hold
that the trial court properly granted Samudio's plea to the jurisdiction.

 We overrule Zurich's first issue.

Plea to the Jurisdiction as a Procedural Mechanism

 In its second issue, Zurich contends "[Samudio's] argument, taken to its
logical extension, would obviate summary judgment practice." It asserts that in
instances where the "court can reach only one result in a case, the case is ripe for
summary judgment." Having held the trial court properly resolved the dispute as a
plea to the jurisdiction, we overrule Zurich's second issue.

Attorney's Fees

 In its third issue, Zurich contends the trial court erred in ordering it to pay
Samudio's attorney's fees. Zurich asserts that Samudio "is not entitled to recover
attorney's fees in this case because he has not proved that he is a prevailing party
under the act." 

 The availability of attorney's fees under a particular statute is a question of
law for the court. Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999).
Therefore, we review this issue de novo. El Paso Natural Gas Co. v. Minco Oil &
Gas, Inc., 8 S.W.3d 309, 312 (Tex. 1999). A trial court's dismissal for lack of
subject matter jurisdiction does not prevent the concurrent award of attorney's fees
under a mandatory award provision. Nauslar v. Coors Brewing Co., 170 S.W.3d
242, 257 (Tex. App.--Dallas 2005, no pet.).

 Zurich's lawsuit is the appeal of a decision by an appeals panel of the
Division, which is authorized by Chapter 410, Subchapter G of the Texas Labor
Code. Tex. Lab. Code. Ann. §§ 410.301-.308 (Vernon 2006). The Texas Workers'
Compensation Act provides that in a suit for "judicial review under Subchapter G,
Chapter 410, of a final decision of the appeals panel regarding compensability . . . 
or the amount of, income . . . benefits," an insurance carrier "is liable for reasonable
and necessary attorney's fees . . . as a result of the insurance carrier's appeal if the
claimant prevails on an issue on which judicial review is sought by the insurance
carrier . . . ." Id. § 408.221(c) (Vernon 2006). Otherwise, the claimant's attorney's
fees are to be paid from the claimant's recovery. Id. § 408.221(b) (Vernon 2006). 
In either circumstance, "[a]n attorney's fee . . . for representing a claimant before the
. . . court under this subtitle must be approved by the . . . court." Id. § 408.221(a). 

 The Texas Workers' Compensation Act does not define "prevailing party." 
 See Tex. Lab. Code. Ann. §§ 401.001-506.002 (Vernon 2006). Cases construing
"prevailing party" under Civil Practice and Remedies Code chapter 38 and under
Texas Rule of Civil Procedure 131 have consistently applied the same definition and
analysis to the phrase. A prevailing party is one who is vindicated by the trial court's
judgment. Flagship Hotel, Ltd. v. City of Galveston, 117 S.W.3d 552, 564-65 (Tex.
App.--Texarkana 2003, pet. denied) (construing Chapter 38); Scholl v. Home
Owners Warranty Corp., 810 S.W.2d 464, 468-69 (Tex. App.--San Antonio 1991,
no writ) (construing Rule 131); see also Hagberg v. City of Pasadena, 224 S.W.3d
477, 484-85 (Tex. App.--Houston [1st Dist.] 2007, no pet.) (claimant is prevailing
party entitled to attorney's fees where claimant began with final Division decision
in his favor and after lawsuit is filed, parties are put back in same position as before
carrier filed judicial review).

 Section 408.147(c) requires that the claimant prevail "on any disputed issue,"
and § 408.221(c) requires that the claimant "prevail on an issue on which judicial
review is sought by the insurance carrier." See Tex. Lab. Code Ann. §§ 408.147(c),
408.221(c) (Vernon 2006). Here, Samudio sought and obtained dismissal of
Zurich's claim. When the trial court granted Samudio's plea to the jurisdiction,
Zurich's claim was disposed of and Samudio was in the same position he would be
in if he had prevailed after a trial on the matter. The dismissal of Zurich's claim
made Samudio a prevailing party for the purposes of §§ 408.147 and 408.221. See
Ins. Co. of State of Pa. v. Orosco, 170 S.W.3d 129, 134 (Tex. App.--San Antonio
2005, no pet.) (holding that claimant who sought and obtained dismissal of carrier's
judicial review challenge of Division decision through plea to jurisdiction, was
prevailing party for purposes of § 408.147); see also Weng Enter., Inc. v. Embassy
World Travel, Inc., 837 S.W.2d 217, 222-23 (Tex. App.--Houston [1st Dist.] 1992,
no writ) (term "prevailing party" refers to party who successfully prosecutes action
or successfully defends against action on main issue). We hold the trial court
properly awarded attorney's fees to Samudio, the prevailing party in this appeal from
the Division's decision.

 We overrule Zurich's third issue.

Conclusion

 We affirm the judgment of the trial court.


 


 Elsa Alcala

 Justice


Panel consists of Chief Justice Radack, and Justices Alcala and Higley.



1. Effective September 1, 2005 the legislature abolished the Texas Workers'
Compensation Commission (the Commission), and transferred its responsibilities to
the Texas Department of Insurance, Division of Workers' Compensation (the
Division). Act of May 29, 2005, 79th Leg. R.S., ch. 265 §§ 8.001(b), 8.004(a), 2005
Tex. Sess. Law Serv. 608. Although both the Commission and the Division were in
operation during the time relevant to this dispute, for consistency we will refer to the
Commission and the Division as the Division only.
2. See Tex. Lab. Code Ann. § 408.121 (Vernon 2006); Tex. Dep't of Ins., Div. Of
Workers' Comp. v. Lumbermens Mut. Cas. Co., 212 S.W.3d 870, 872 (Tex.
App.--Austin 2006, pet. denied).
3. Id. § 408.124(b) (Vernon 2006); 28 Tex. Admin. Code § 130.1(c)(2)(B)(I) (West
2009) (The fourth edition of the Guides must be used for impairment ratings issued
on or after October 15, 2001.
4. Lumbermens Mut. Cas. Co., 212 S.W.3d at 872 (Tex. App.--Austin 2006, pet.
denied).
5. Id.
6. Id. at 873.
7. Id. at 876-77.
8. Tex. Dep't of Ins. Commissioners' Bulletin, No. B-0033-07 (July 18, 2007). 
9. See Tex. Lab. Code Ann. § 408.221 (Vernon 2006).